UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ERNIE DUBEY                             :
                                        :
        v.                              :        C.A. No. 15-126ML
                                        :
CAROLYN COLVIN                          :
Commissioner of the Social Security     :
Administration                          :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint

on April 1, 2015 seeking to reverse the decision of the Commissioner.  On September 30, 2015,

Plaintiff filed a Motion for Order Reversing Decision of the Commissioner.  (Document No. 12).

On October 30, 2015, the Commissioner filed a Motion for an Order Affirming the Commissioner's

Decision.  (Document No. 13).  Plaintiff filed a Reply Brief on November 13, 2015.  (Document No.

14).

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent research, I find that there is substantial evidence in this record to

support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

of the Act.  Consequently, I recommend that the Commissioner's Motion (Document No. 13) be GRANTED and that Plaintiff's Motion (Document No. 12) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 12, 2011 (Tr. 125-126) alleging disability since June 1, 2009.[1]  (Tr. 195).  Plaintiff's date last insured for DIB is December 31, 2013.  (Tr. 195).  The Application was denied initially on January 6, 2011 (Tr. 122-124) and on reconsideration on October 20, 2011.  (Tr. 115-117).  On November 4, 2011, Plaintiff requested an Administrative hearing.  On April 16, 2013, a hearing was held before Administrative Law Judge Donald P. Cole (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  (Tr. 325-362).  The ALJ issued an unfavorable decision to Plaintiff on May 17, 2013.  (Tr. 16-27).  The Appeals Council denied Plaintiff's request for review on January 20, 2015.  (Tr. 5-7). Therefore the ALJ's decision became final.  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by (1) failing to issue an exhibit list; (2) failing to properly assess Plaintiff's borderline intellectual functioning under Listing 12.05C; (3) rendering an unsupported RFC finding; (4) failing to explicitly indicate the weight given to all relevant evidence; and (5) improperly assessing Plaintiff's credibility.

The Commissioner disputes Plaintiff's claims and contends that the alleged omission of an exhibit list is not reversible error and that substantial evidence supports the ALJ's Step 3 finding and

---

[1] Approximately one month after filing his DIB Application, Plaintiff contacted his local Social Security Office to report that he was not disabled prior to July 20, 2011 – thirteen days after his application date.  (Tr. 173).  The ALJ used the original alleged onset date (June 1, 2009) in his decision. (Tr. 19). Plaintiff does not challenge that determination on appeal.  (Document No. 12 at p. 3) (citing Tr. 125).

RFC assessment.  The Commissioner also argues that Plaintiff has waived his other arguments since they are boilerplate and not properly supported.

### III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed

impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.  Developing the Record

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision.  <u>Carrillo Marin v. Sec'y of Health and Human</u>

<u>Servs.</u>, 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments which significantly limit her physical or mental ability to do basic work

activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past

work) prevent her from doing other work that exists in the national economy, then she is disabled.

20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through

four, but the Commissioner bears the burden at step five.  <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138,

144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe,

the ALJ must consider the combined effect of all of the claimant's impairments, and must consider

any medically severe combination of impairments throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings

as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.   Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.      Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.      Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the

implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.   APPLICATION AND ANALYSIS

Plaintiff was fifty-six years old on the date of the ALJ's decision.  (Tr. 332).  Plaintiff has an Eleventh Grade education and worked in the past as a maintenance worker.  (Tr. 189, 333). Plaintiff retired in November 2008, after a thirty-four year career as a maintenance worker for the State of Rhode Island.  (Tr. 188).  Plaintiff initially alleged disability due to multiple sclerosis.  Id. He now alleges disability due to borderline intellectual functioning, cognitive disorder and Leukodystrophy.  (Document No. 12 at p. 3).

In September 2003, Plaintiff underwent a neuropsychological evaluation with Margaret DiCarlo, Ph.D., to address his reported memory and concentration problems.  (Tr. 319-323). According to Dr. DiCarlo's report, Plaintiff achieved a 30/30 on a Mini-Mental Status Examination ("MMSE") administered in July 2003.  (Tr. 320).  He also reported a history of special education and trouble learning.  Id.  Upon examination, he had some difficulty retrieving words, dates and times, but otherwise appeared normal.  Id.

Dr. DiCarlo administered the Wide Range Achievement Test Third Edition ("WRAT-3") and Wechsler Adult Intelligence Scale Third Edition ("WAIS-IH").  (Tr. 321).  On the WRAT-3, Plaintiff achieved an IQ score of 73, which placed him in the borderline range of intellectual functioning.  Id.  On the WAIS-III, he achieved a verbal index score of 78 (borderline) and a working memory index score of 86 (low average).  Id.  Dr. DiCarlo diagnosed Plaintiff with (1) mild

cognitive disorder not otherwise specified, with a history of alcohol abuse and a remote history of polysubstance abuse; and (2) borderline intellectual functioning.  (Tr. 323).

Plaintiff saw Dr. Dennis Aumentado in March 2004.  (Tr. 311).  At the time, he was not taking any medication for his mild cognitive impairment, but "was working at Zambarano as a custodian and was functioning quite well."  Id.  The record reflects no further treatment until June 15, 2010, when Plaintiff returned to Dr. Aumentado for an evaluation.  Id.  Plaintiff's sister reported that he had become isolated, critical, judgmental and mistrustful.  Id.  Plaintiff cleaned and did his laundry, but rented a room to a tenant who did the cooking and dishes.  Id.  He was "perfectly capable" of balancing his own checkbook, but let his sister do it for him.  Id.  He had no difficulty driving, was "independent for all of his activities of daily living," and had no behavioral issues.  Id.

Upon examination, Plaintiff had no physical abnormalities and achieved a 24/30 MMSE score.  Id.  Dr. Aumentado diagnosed Plaintiff with an unspecified "cognitive impairment," likely "related to his borderline cognitive functioning, which is his intellectual baseline."  Id.  He wrote that Plaintiff "has no functional or behavioral issues at this point" id. and referred him for formal cognitive testing.   (Tr. 312-313).   Meanwhile, a repeat brain MRI showed white matter hyperintensity that did not vary significantly from a 2004 study.  (Tr. 317; see Tr. 301).

On July 16, 2010, Plaintiff underwent a neuropsychological evaluation with Laura Frakey, Ph.D.  (Tr. 238-244).  Dr. Frakey noted that Dr. DiCarlo's September 2003 evaluation had revealed mild executive dysfunction, which was "felt to be associated with the effects of substance abuse superimposed on pre-existing Borderline Intellectual functioning."  (Tr. 238).  She also noted that

Plaintiff had scored a 24/30 on a recent MMSE, which was six points lower than in 2004, when he achieved a perfect score.  Id.

During the interview portion of the evaluation, Plaintiff reported problems with word-finding and memory, but indicated that his attention and focus were "ok" when he was interested.  (Tr. 238-239).  He had no difficulty driving, managed his own finances, balanced his own checkbook, maintained good hygiene and collected cans and metal for recycling.  Id.  He reportedly attended special education classes in school, earning Cs, Ds and Fs and repeated the First Grade.  Id. Plaintiff reported a history of drug and alcohol use, but said that he had not used alcohol for one year and had last used cocaine six months earlier.  Id.

Upon mental status examination, Plaintiff generally appeared normal, but said he was depressed because "there is nothing to do" and he felt "bored."  Id.  He took the WAIS-IV and achieved a full-scale IQ score of 66, with index scores ranging from 68-77, which reflect extremely low to borderline cognitive functioning.  (Tr. 240).  Dr. Frakey noted that comparisons with Plaintiff's September 2003 evaluation "were limited by differences in the test batteries and manner in which the data were interpreted," but that the 2003 tests suggested "some mild decline in verbal intellectual abilities" and a significant reduction in Plaintiff's ability to retain newly-learned information, from 100% in 2003 to only 40% in 2010.  (Tr. 243).  Dr. Frakey found no compelling evidence of decline that would support a diagnosis of dementia, but determined that Plaintiff met the clinical criteria for diagnoses of cognitive disorder and depressive disorder.  Id.

On December 21, 2010, Plaintiff underwent a consultative psychological examination with Wendy Schwartz, Ph.D., in connection with a prior application for disability benefits.  (Tr. 303-308).

-14-

He said he was applying for disability due to memory problems.  (Tr. 303).  His hygiene was fair to good; his motor skills and mannerisms appeared normal; he was cooperative; he maintained good eye contact and adequate rapport; he demonstrated a good sense of humor; he was easy to understand; and he appeared to have somewhat limited insight, but recalled specific details.  (Tr. 303-304).  Plaintiff said he "did a lot of drugs" during his childhood.  (Tr. 304).  He reported that he repeated the First Grade, but denied any behavior problems and said he did not receive special education services.  Id.  He denied any significant medical problems, but reported that his short-term memory became a problem around 2003.  Id.  He reported a history of drinking "about a six-pack" of beer every other night, but said he had quit about a year earlier.  Id.  He also said he had stopped using drugs about ten years earlier.  Id.

With regard to daily activities, Plaintiff said he "putter[ed] around," occasionally ran errands, and watched television.  (Tr. 306).  He drove, cleaned and paid his bills, but another household member usually cooked and went shopping.  Id.

Upon objective examination, Plaintiff was able to sustain focus; successfully performed serial 7s; and correctly spelled "world" backward.  Id.  His score on the MMSE was within normal limits; he was alert and oriented; he spoke clearly; and he had logical thought association, good judgment and poor to fair insight.  (Tr. 307).  Dr. Schwartz acknowledged that Plaintiff "appears to be of borderline intelligence and does present with some memory deficits" (Tr. 307), but added that the deficits appeared mild and were "not particularly apparent during the current evaluation."  (Tr. 308).  She opined that Plaintiff could understand, remember and follow directions; could respond

appropriately to customary work pressures, colleagues and supervisors, as evidenced by his significant work history; and had adequate coping skills.  Id.

In February 2011, Plaintiff returned to Dr. Aumentado, who reviewed Dr. Frakey's report and diagnosed Plaintiff with a "cognitive disorder which is related to his borderline cognitive functioning which is his intellectual baseline."  (Tr. 301).

On June 18, 2011, Plaintiff presented to the Hospital Emergency Department with ataxia. (Tr. 268-272).  He said he had been unable to get up off the couch for about two hours after spending an hour trimming hedges in the heat.  (Tr. 270-271).  His ataxia resolved spontaneously shortly after admission.  (Tr. 268, 270).  A brain MRI showed extensive periventricular disease, suggestive of chronic demyelinating disease.  (Tr. 249, 254, 299). However, Plaintiff did not show any neurological deficits.  (Tr. 268).

On July 6, 2011, Vladislav Zayas, M.D. a Neurologist, noted that Plaintiff appeared normal upon examination.  (Tr. 263).  He did not test Plaintiff's cognitive functioning, "[s]ince he is quite intact on the current exam."  (Tr. 264).  When he returned to Dr. Zayas in August 2011, he reported a family history of leukodystrophy and cognitive problems.  (Tr. 261).  Dr. Zayas noted that Plaintiff had scored a 22/30 on a recent MMSE (see Tr. 247), but his neurological functioning was still intact. (Tr. 261).  Dr. Zayas offered a differential diagnosis of "residua of cocaine use, demyelinating illness, e.g., multiple sclerosis and now Leukodystrophy," with "some cognitive limitations."  (Tr. 261-262).  He recorded the same findings during a follow-up visit in October 2011.  (Tr. 245-246).

In June 2012, Plaintiff returned to Dr. Aumentado, who had not seen him in more than a year.  (Tr. 228). Tests for MS were negative, and MRI studies were stable.  Id.  Plaintiff's memory,

calculation ability, fund of knowledge and verbal fluency were impaired, but his consciousness, orientation, judgment and attention were normal.  (Tr. 229-230).  Dr. Aumentado assessed Leukodystrophy and impaired cognitive functioning and prescribed a vitamin tablet.  (Tr. 230).  During a follow-up evaluation in December 2012, Dr. Aumentado wrote that Plaintiff's "cognitive functioning was impaired," and diagnosed him with "[m]emory lapses or loss."  (Tr. 231-232).

In December 2010, a State agency psychologist, Marnee Colburn, Ph.D., reviewed the available records and opined that Plaintiff's cognitive disorder was not severe, as it caused no restriction of his activities of daily living, mild limitations in social functioning and concentration, persistence or pace, and no episodes of decompensation.  (Tr. 30-32).

In August 2011, a State agency physician, Donn Quinn, M.D., opined that Plaintiff did not have a medically determinable severe physical impairment, notwithstanding his brief hospitalization for ataxia and diagnosis of demyelinating disease.  (Tr. 38-39).  In October 2011, a second State agency physician affirmed Dr. Quinn's assessment.  (Tr. 45-46).

## A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 4 and, alternatively, at Step 5.  (Tr. 26 and n.11).  At Step 2, the ALJ found that Plaintiff had the following severe impairments: cognitive disorder and borderline intellectual functioning.  (Tr. 21-22).  The ALJ also considered Plaintiff's leukodystrophy and other impairments, but found that those conditions did not significantly limit Plaintiff's ability to perform basic work activities and, therefore, were not severe.  Id.  See 20 C.F.R. § 404.1521(a).  At Step 3, the ALJ found that Plaintiff's combined impairments did not meet or medically equal any Listing.  (Tr. 22-23).

Before proceeding to Step 4, the ALJ determined that Plaintiff had the RFC for work at all exertional levels, with the following non-exertional limitations: "a limitation in attention/ concentration with the ability to understand, remember and carry out only simple, routine, repetitive tasks including the need for ordinary work breaks every two hours during an eight-hour workday." (Tr. 23-26).  At Step 4, the ALJ found that Plaintiff was not disabled because he was capable of performing his past relevant work as an industrial cleaner.  (Tr. 26).  Although the ALJ did not formally reach Step 5, he noted, "in the alternative," that the VE testified that Plaintiff could perform other medium unskilled jobs existing in significant numbers in the national economy.  (Tr. 26, n.11; <u>see</u> Tr. 358-360).

**B.**      **Substantial Evidence Supports the ALJ's Step 3 Finding that Plaintiff Did Not Meet or Equal Listing 12.05C**

Listing 12.05 provides the criteria for "Intellectual Disability"[2] as follows: "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; <u>i.e.,</u> the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied."

Thus, Listing 12.05 "contains two parts: (1) an introductory paragraph that describes mental retardation in terms of subaverage intellectual functioning and deficits in adaptive functioning manifest before age 22; and (2) subparagraphs specifying the required level of severity."  <u>Libby v. Astrue</u>, 473 F. App'x 8, 8-9 (1st Cir. 2012).  To be considered disabled pursuant to Listing 12.05,

---

[2]  Listing 12.05 was recently amended to change the name of the category from "mental retardation" to "intellectual disability," but the substantive requirements to meet the Listing have not changed.

Plaintiff must meet both the requirements of the introductory paragraph <u>and</u> the requisite level of severity in one of the subparagraphs. <u>Id.</u> at p. 8.

Here, Plaintiff argues that the ALJ's Step 3 finding that he does not meet or equal the requirements of Listing 12.05C "flies in the face of all logic" because the ALJ did not properly consider [Plaintiff's] IQ scores, let alone the numerous medical source evaluations which are at least highly suggestive of far greater intellectual deficits than the ALJ even addresses in his decision." (Document No. 12 at p. 10). Listing 12.05C is satisfied where there is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. While Defendant concedes for sake of argument that Plaintiff meets the latter requirement, it argues that the ALJ's decision on the IQ requirement is adequately supported by the record.

The ALJ was faced with two conflicting IQ scores. On September 4, 2003, Plaintiff underwent a neuropsychological evaluation with Dr. DiCarlo due to reported difficulties with memory functions. (Ex. 2F). Plaintiff reported "occasional difficulty with concentration, speed of processing and spontaneous retrieval of information" but "denied any interference with completing his work-related activities as a groundskeeper" and described his job as "routine and unchallenging." (Tr. 319). Dr. DiCarlo administered IQ tests to Plaintiff which resulted in a verbal IQ score of 78 and a WRAT score of 73. (Tr. 321). She described these scores as "borderline" and rendered a diagnosis of mild cognitive disorder and borderline intellectual functioning. (Tr. 322-323). Several years later, on July 16, 2010, Plaintiff underwent another neuropsychological evaluation conducted by Dr. Frakey. (Ex. 20F). Dr. Frakey administered an IQ test which resulted in a full scale IQ score

of 66.  (Tr. 240).  She concluded that Plaintiff was functioning in the "extremely low range of intelligence."  (Tr. 243).  She noted that the discrepancy between the current scores, and those obtained in 2003 "suggest there has been some mild decline in verbal intellectual capabilities."  Id.

In his decision, the ALJ weighed these competing IQ scores and gave more weight to the earlier/higher 2003 scores.  (Tr. 23).  Plaintiff has shown no error in the ALJ's conclusion.  First, in the context of evidence of cognitive decline, the ALJ reasonably inferred that the 2003 score, which was closer in time to Plaintiff's developmental period, was more probative of his intellectual functioning before age 22.  (Tr. 23).  See Williams v. Shalala, 35 F.3d 573, 1994 WL 502636 at *6 (9th Cir. Sept. 13, 1994) (holding that earlier significantly higher IQ scores suggest that claimant's condition may not have existed during his developmental period, i.e., prior to age 22, which would preclude his mental condition from satisfying Listing 12.05).  The ALJ also accurately observed that the 2010 IQ score was inconsistent with the record of Plaintiff's independent daily activities, including his lengthy career of full-time employment, and that neither Dr. DiCarlo nor Dr. Frakey diagnosed Plaintiff with even mild mental retardation.  Id.

The ALJ was faced with conflicting evidence regarding Plaintiff's IQ and a claim of severe intellectual disability that is plainly inconsistent with Plaintiff's prior work history and record of daily activities.  See Wilkinson v. Astrue, C.A. No. 07-090M, 2008 WL 1925133 at *3 (D.R.I. April 30, 2008) ("The Commissioner may...reject IQ scores that are inconsistent with the record.").  It is the ALJ's responsibility to resolve conflicts in the evidence, not the Court's.  See Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) ("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of HHS, 826 F.2d 136, 141 (1st Cir. 1987) ("Conflicts in the evidence are, assuredly, for the [Commissioner] – rather than the courts –

to resolve."). Thus, the ALJ had the discretion to weigh the evidence and give more weight to the results of the 2003 IQ testing than to the results of the 2010 IQ testing, and, since his conclusions are supported by the record, they are entitled to deference.

### C.    Plaintiff Has Shown No Error in the ALJ's Mental RFC Assessment

Plaintiff next argues that remand is necessary because the hypothetical posed to the VE by the ALJ is inconsistent with the ALJ's ultimate RFC finding. This argument is a red herring. Plaintiff faults the ALJ for not including any social limitations in his RFC even though they were included in the hypothetical posed to the VE. (See Tr. 359). However, the error, if any, is immaterial since the ALJ testified that Plaintiff could perform his past work even with such limitations. Id. Thus, the purported discrepancy is immaterial since the VE concluded that Plaintiff could perform his past work with a set of limitations even more restrictive than the ALJ's RFC assessment. See Doyle v. Colvin, C.A. No. 14-30098, 2015 WL 3649795 at *5 (D. Mass. June 10, 2015).

### D.    Plaintiff's Other Arguments Are Unsupported

Finally, Plaintiff makes three other arguments for remand that are either unsupported or undeveloped. First, Plaintiff faults the ALJ for failing to prepare and issue an exhibit list. However, the administrative record includes a detailed "List of Exhibits," and Plaintiff has shown no harm or prejudice that would warrant a remand. Second, Plaintiff argues that the ALJ failed to explicitly indicate the weight given to all relevant evidence. However, Plaintiff's argument is purely boilerplate. He has not identified any particular medical evidence that the ALJ neglected to weigh

or any resulting harm or prejudice that would warrant a remand.[3]  Third, Plaintiff argues that the ALJ failed to properly assess his credibility.  However, again, Plaintiff's argument is purely boilerplate.  He has offered no substantive argument in the context of this record and does not make any citations to the record in support.  Thus, the argument is completely unsupported.

## VI.   CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion to Affirm (Document No. 13) be GRANTED and that Plaintiff's Motion for Remand (Document No. 12) be DENIED.  Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 11, 2015

---

[3]  In his Reply Brief, Plaintiff argues that the ALJ erred by failing to articulate the weight accorded to the opinions of Drs. Aumentedo and Frakey.  (Document No. 14 at p. 8).  This is too little and too late.  Plaintiff should have made this argument in his principal brief and not in a reply.  See Local Rule CV 7(b)(2).  By doing so, Plaintiff has deprived Defendant of any meaningful opportunity to respond and thus the argument is deemed waived.  See Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Com'n, 59 F.3d 284, 293-294 (1st Cir. 1995) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  It is also noted that the Reply Brief makes no effort to support Plaintiff's arguments as to the exhibit list or credibility finding.